**IN THE UNITED STATED DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA NEWPORT NEWS DIVISION**

| | | |
|---|---|---|
| **GREATER DIVIDE, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** 4:21-cv-137 |
| | ) | |
| **LIPPE TAYLOR GROUP, LLC,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |

**VERIFIED COMPLAINT**

Greater Divide, Inc. ("Greater Divide"), plaintiff, for its Verified Complaint against Lippe Taylor Group, LLC ("Lippe Taylor"), defendant, states as follows:

**INTRODUCTION**

1. This action arises from a contractual business relationship between Greater Divide and Lippe Taylor, dated April 6, 2020, under which Greater Divide provided data science services to Lippe Taylor for marketing research on a specific project basis. More specifically, the services were performed by Greater Divide's most important and key employee, Kyle Stamper, who had been uniquely trained to have both marketing research and data science expertise and skill. Mr. Stamper had been trained by Greater Divide over several years to combine these two areas of expertise and to have the unique combination of marketing research and data science skills so that Greater Divide could differentiate itself from other boutique research firms. Data scientists who also have market research expertise are virtually impossible to find and Greater Divide had spent substantial time and resources to develop Mr. Stamper's unique skills.

2. At the conclusion of the project, and as a result of getting an on-the-job interview of Mr. Stamper pursuant to the contractual relationship, Lippe Taylor solicited and recruited Mr.

Stamper to leave Greater Divide and join Lippe Taylor.  Lippe Taylor then sought to cover up and hide its communications and solicitation of Mr. Stamper, which violated the parties' contractual relationship.

3.      Lippe Taylor's solicitation and hiring of Mr. Stamper was in direct violation of a contractual provision governing the parties' business relationship, which made it improper for either party to solicit or hire the other party's employees during the term of the contract or for a period of 18 months thereafter.

4.      In addition to breaching the parties' contract (Count I), Lippe Taylor's wrongful conduct has also resulted in: the unlawful interference with and systematic employee pirating of Greater Divide's key employee with whom it had economic expectancies (Count II); common law unfair competition in usurping corporate opportunities belonging to Greater Divide (Count III); and the misappropriation of Greater Divide's trade secrets (Count IV) and confidential business information (Count V).

5.      The improper and unlawful conduct of Lippe Taylor has caused and will continue to cause significant injury to Greater Divide's employment relationships and its ongoing business. Greater Divide has suffered or will suffer significant losses in the form of loss of market valuation based on losing a key employee trained over several years to know both survey research and data science which had provided Greater Divide with a unique differentiation from its competition, the costs to replace the employee pirated by Lippe Taylor, lost sales or lost contracts as a result of the departure and loss of the pirated employee, lost revenue and profits, loss of market valuation as a result of business lost on account of Lippe Taylor's breach, and its attorneys' fees and costs.  Lippe Taylor has received an unlawful benefit and been unjustly enriched as a result of its intentional breach of the parties' Agreement and its other wrongful conduct.

**THE PARTIES**

6. Greater Divide, Inc. is a Virginia Corporation, with its principal place of business currently located in Keswick, Virginia and previously located in Hampton, Virginia, conducting business in Virginia and throughout the United States. Greater Divide is a woman-founded business, owned and operated by Ms. Kirsten Bech.

7. Lippe Taylor Group, LLC is a New York limited liability company, with its principal place of business located at 140 Broadway, 28th Floor, New York, New York 10005, conducting business in Virginia and throughout the United States. Like Greater Divide, Lippe Taylor is a woman-owned business. Founded by Ms. Maureen Lippe, Lippe Taylor is engaged in marketing to women and certified by the Women's Business Enterprise National Council.

**JURISDICTION AND VENUE**

8. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). This action is between citizens of different states and the amount in controversy is in excess of $75,000.00, exclusive of interest and costs.

9. This Court also has federal question jurisdiction over Count IV pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836 (Defend Trade Secrets Act) and supplemental jurisdiction over all other counts pursuant to 28 U.S.C. § 1367.

10. This Court has personal jurisdiction over Lippe Taylor pursuant to Section 6 of the Agreement signed by the parties, attached hereto as Exhibit A to this Verified Complaint, providing for the exclusive jurisdiction and venue for any action arising from or relating to the Agreement to be in the state or federal courts located in Hampton, Virginia. This Court also has personal jurisdiction over Lippe Taylor both generally and specifically by virtue of Lippe Taylor conducting business in the Commonwealth of Virginia, entering into a contractual business

relationship with Greater Divide in Virginia for services to be performed in Virginia and as a result of engaging in tortious acts and breach of the parties' contract against Greater Divide in Virginia.

## FACTUAL ALLEGATIONS

## GREATER DIVIDE AND LIPPE TAYLOR'S CONTRACTUAL RELATIONSHIP

11. Greater Divide was a market research company with expertise in data science at all material times. It provided services to companies looking for this expertise. Lippe Taylor is a public relations and digital marketing agency that seeks to utilize such services to perform work for its clients.

12. On April 6, 2020, Greater Divide and Lippe Taylor entered into a Statement of Work Agreement (hereinafter referred to as the "Agreement") by which Greater Divide was to render services to Lippe Taylor that were to be performed by Greater Divide's employee Kyle Stamper. The contract was signed by Paul Dyer, the CEO of Lippe Taylor. A copy of the executed Agreement is attached hereto and incorporated herein as Exhibit A.

13. Under the Agreement, Greater Divide was to provide data science services for marketing research in connection with a specific project on which Lippe Taylor wanted such services.

14. Kyle Stamper, Lippe Taylor's new employee, performed the services under the Agreement on behalf of Greater Divide. Greater Divide successfully performed its services under the Agreement to Lippe Taylor's satisfaction.

15. Greater Divide and Lippe Taylor discussed that this first project would result in further work and projects between Greater Divide and Lippe Taylor over the summer of 2020 and that Mr. Stamper would provide further data science work for Lippe Taylor beyond the scope of the original project outlined in the Agreement. The parties even engaged in discussions in June,

2020, in which Lippe Taylor expressed an interest in acquiring Greater Divide in order to leverage its expertise and capabilities in data science and market research.

16.     A key provision of the Agreement provided that the parties would not solicit or hire each other's employees during the term of the Agreement and for 18 months thereafter.  This was a material provision because Lippe Taylor would be working with and exposed to Greater Divide's key employee and talent during the course of the Agreement, namely, Mr. Stamper.    The Agreement provided:

> **Neither Party may, directly or indirectly, solicit or hire the other Party's employees**, agents, consultants, and/or subcontractors without such other Party's express prior written consent during the term of the SOW and for 18 months thereafter.

See, Exhibit A, Agreement at Section 6, page 6 (emphasis added).

17.     In addition, the Agreement has a broad indemnification clause by which Lippe Taylor agrees to indemnify Greater Divide for any losses, costs, damages or expenses as the result of any breach of the Agreement or any other act or omission by Lippe Taylor. The express contractual indemnification is as follows:

> **Client agrees to indemnify**, defend and hold harmless Agency from and against any and all claims, demands, **losses, costs, damages, actions, and expenses arising from or relating to** (a) Agency's rendering of services pursuant to this SOW . . . and **(d) any breach, misrepresentation or other act or omission by Client and Client's agents, employees,** affiliates, and/or subcontractors.

See, Exhibit A, Agreement at Section 6, page 5 (emphasis added).

18.     The Agreement also contains an attorney's fees provision by which the prevailing party in any lawsuit under the contract shall be entitled to its attorney's fees, costs, expert fees and other expenses.  The Agreement states:

> In any action, suit, or proceeding arising from or relating to this SOW, **the prevailing Party shall be entitled to recover from the non-prevailing Party its reasonable attorney's fees, costs, expert fees, and other expenses.**

See, Exhibit A, Agreement at Section 6, page 7 (emphasis added).

**LIPPE TAYLOR'S SOLICITATION AND HIRING OF STAMPER**

19. Despite the contractual prohibition applying to Lippe Taylor to not "solicit or hire" Greater Divide employees "directly or indirectly," Lippe Taylor has solicited and hired Mr. Stamper in direct breach of the foregoing contractual restriction. Lippe Taylor has not disputed that its hiring of Mr. Stamper is a breach of the Agreement.

20. Lippe Taylor initiated contact with Mr. Stamper on or about October 9, 2020 to induce his departure, reaching out to him by email at his Greater Divide corporate email, and thereafter systematically pirated Mr. Stamper away from Greater Divide.

21. As evidence of the improper solicitation and breach of the Agreement, the emails between Lippe Taylor and Mr. Stamper concerning these communications and solicitations were deliberately moved to a private email.

22. In a series of emails sent to Greater Divide's corporate email, without notice to Greater Divide management, Lippe Taylor conducted a Zoom meeting with Mr. Stamper on October 21, 2020, on the same day Mr. Stamper was introduced to Lippe Taylor's new Head of Insights and Analytics to whom Mr. Stamper would be reporting at Lippe Taylor.

23. As the targeting intensified, Lippe Taylor stated in an email to Mr. Stamper on November 10, 2020: "I'll have details to discuss with you soon as discussed." Then on November 16, 2020, Lippe Taylor stated in an email to Mr. Stamper: "I have the offer details, but always better to talk!" Finally, the targeted pirating culminated in Lippe Taylor asking Mr. Stamper as follows on November 19, 2020: "Do you have a personal email to use?"

24. All communications between Lippe Taylor and Mr. Stamper, which could be traced, stopped at that time as Lippe Taylor moved them to Mr. Stamper's personal email so that Greater Divide would be foreclosed from knowledge of the communications. Upon information and belief, such measure was at the request and suggestion of Lippe Taylor and is in recognition of the impropriety of this conduct.

**THE HIRING OF STAMPER WAS FOR AN IMPROPER PURPOSE**

25. Mr. Stamper was a key employee of Greater Divide and was critical to Greater Divide's business until he was hired away by Lippe Taylor. His expertise is in data science, a capability that Lippe Taylor is seeking to develop and expand. Lippe Taylor was well aware that Mr. Stamper performed data science services as a Greater Divide employee to Lippe Taylor in 2020 pursuant to the parties' Agreement.

26. Compounding the seriousness of this conduct, Lippe Taylor pirated Mr. Stamper instead of expanding its relationship with Greater Divide or acquiring Greater Divide. Greater Divide had been in discussions to work in an on-going relationship with Lippe Taylor on data science projects through Mr. Stamper, a relationship Lippe Taylor termed in emails as "partnering with Greater Divide" and "working together . . . [on] lots and lots of toolets to design." Throughout 2020, Lippe Taylor expressed interest in expanding its relationship with Greater Divide with specific additional projects based on services that it was contemplated Mr. Stamper would perform.

27. Lippe Taylor also expressed interest on June 26, 2020 in an acquisition of Greater Divide to leverage its expertise and capabilities. In the course of the discussion about an acquisition, Greater Divide disclosed to Lippe Taylor that Greater Divide was grooming Mr. Stamper to take over the management of Greater Divide. At the time of the solicitation of Mr. Stamper, discussions between Greater Divide and Lippe Taylor about a possible acquisition had

taken place with this knowledge. Both the on-going business relationship and acquisition were circumvented by the improper solicitation and hiring of Greater Divide's most important – in fact, its only, employee versed in data science, Kyle Stamper.

28.     Instead of continuing its ongoing business relationship with Greater Divide, or alternatively, acquiring Greater Divide's business and expertise, Lippe Taylor decided to interfere with Greater Divide's employment relationship and hired away its key employee, Mr. Stamper, who was fundamental to Greater Divide's business and valuation.

29.     Lippe Taylor's pirating of Greater Divide's key employee was for the improper purpose of decimating Greater Divide's ongoing data science business and its services offered to clients through Mr. Stamper and in order to acquire Greater Divide's trade secrets and confidential business information through the hiring of Mr. Stamper.

**THE MISAPPROPRIATION OF GREATER DIVIDE'S TRADE SECRETS**

30.     On February 13, 2020, Greater Divide and Lippe Taylor entered into a Mutual Non-Disclosure Agreement (hereinafter referred to as the "NDA") to govern the exchange of proprietary or confidential information in contemplation of the parties' potential business relationship.  A copy of the executed NDA is attached hereto and incorporated herein as Exhibit B.

31.     The NDA was designed to protect the rights of the parties and to set forth the legal obligations of Lippe Taylor with respect to Greater Divide's trade secrets and confidential business information. The NDA expressly states that Lippe Taylor will maintain all proprietary information, i.e., trade secrets and confidential business information, given to it by Greater Divide in strict confidence and to use such information solely for the purpose of doing business with Greater

Divide. This proprietary information is defined to include information concerning Greater Divide employees. The NDA expressly restricts Lippe Taylor and states as follows:

> 3.1. For a period of three (3) years from the date of the last disclosure of Proprietary Information under this Agreement, each Party shall safeguard and hold in strict confidence any Proprietary Information received with the same degree of protection which it affords to its own Proprietary Information of similar importance, but not less than a reasonable degree of care.
>
> 3.2. The Receiving Party shall use and disclose the Proprietary Information solely in furtherance of this Agreement and the Purpose. Unless mutually agreed in writing, each Party agrees not to: (a) disclose the nature of their discussions under this Agreement to any third party; (b) use any Proprietary Information to compete against the other Party; or (c) pursue customers or projects disclosed hereunder.

See, Exhibit B, NDA at ¶¶ 3.1 and 3.2.

32. In addition to confidential information regarding its employees, the proprietary information covered by the NDA also includes, but is not limited to, non-public information relating to Greater Divide's (i) concepts and ideas relating to the development and distribution of content in any medium; (ii) its current, future and proposed products and services; (iii) its trade secrets, drawings, inventions, know-how, software programs and software source documents; (iv) information regarding its plans for research, development, new service offerings or products, marketing and selling, business plans, business forecasts, budgets, licenses and distribution arrangements, prices and costs, current and potential suppliers and customers; and (v) the existence of any business discussions, negotiations, or agreements between the parties. See, Exhibit B, NDA at ¶ 2.1.

33. Greater Divide and Mr. Stamper are in possession of confidential business information rising to the level of legally protectable trade secrets. Lippe Taylor's pirating of a

critical employee with such access and knowledge, upon information and belief, has already resulted, and will continue to result, in improper misappropriation of Greater Divide's trade secrets and confidential business information.  Given Lippe Taylor's admitted solicitation and hiring of Mr. Stamper in direct violation of the parties' Agreement, Lippe Taylor is an active participant or knowing beneficiary of the resulting actual or threatened misappropriation and Lippe Taylor is liable for misappropriation of trade secrets and confidential business information.

34.     Lippe Taylor's pirating of Mr. Stamper and related misappropriation of Greater Divide's trade secrets and confidential business information was done for the unlawful purpose of starting a competing data science business capability at Lippe Taylor that uses the same key employee that has made Greater Divide unique and such a success.

35.     Lippe Taylor has reaped the benefits of its wrongful conduct, including obtaining a key Greater Divide employee experienced and trained in data science, as well as Greater Divide's confidential business information and trade secrets and a business operation that will alleviate the need for Lippe Taylor to have to continue to do business with or acquire Greater Divide.

36.     Lippe Taylor's improper activities have given it a head start on what would have otherwise been a lengthy and expensive process of identifying, recruiting and hiring an employee experienced in data science with marketing research skills and building a new and viable data analytics business segment.

37.     Lippe Taylor's hiring of Mr. Stamper for its improper purpose was confirmed in a Lippe Taylor email mistakenly sent to Greater Divide, ironically enough, directed to Mr. Stamper's old Greater Divide email.  The email was sent on January 11, 2021 by Lippe Taylor's Chief Planning Officer to all Lippe Taylor employees and announced the hiring of Mr. Stamper, the role

he would be playing in developing Lippe Taylor's analytics capabilities, and describing his prior work at Greater Divide. More specifically, the email states as follows:

> Please welcome Kyle Stamper as our new head of Data Science! Kyle sits in the Analytics team and [will] be helping us take Starling AI to the next level among other things as we build out our analytics capabilities in 2021. Previously, Kyle worked as Chief Data Scientist for marketing research firm Greater Divide, developing machine learning and AI technology to extract insights from large-scale data.

Demonstrating that it was well-known Stamper had been providing services to Lippe Taylor – and curiously intimating a part-time relationship with Lippe Taylor in rendering those services, in response to this announcement another Lippe Taylor employee sent an email to Stamper stating "Hi Kyle. Welcome to LT [Lippe Taylor] full-time."

38. Greater Divide's concerns were first raised with Lippe Taylor's CEO in a letter by the undersigned counsel on December 3, 2020, and thereafter, in numerous discussions and negotiations with Lippe Taylor's legal counsel. Lippe Taylor and Greater Divide have not been able to resolve their differences despite these discussions and negotiations on breach of the Agreement by soliciting and hiring Kyle Stamper, the consequences for Greater Divide or safeguards to ensure that the hiring of Mr. Stamper would not adversely impact Greater Divide's business.

39. Of particular concern is the laptop computer owned by Greater Divide that Mr. Stamper failed to return upon his departure. Requests were made of Lippe Taylor to facilitate the return of Greater Divide's laptop computer and Lippe Taylor failed to ensure the timely return of Greater Divide's property. The laptop remained in Mr. Stamper's possession or that of Lippe Taylor's since his departure until it was finally returned in late September, 2021, following repeated requests and demand for its return. Upon its return, the laptop was found to be completely

wiped, with all of its contents deleted or destroyed prior to its return to Greater Divide. The laptop did not contain any of the files, data, client information, deliverables, work product or client presentations that Mr. Stamper used, accessed and created during his employment with Greater Divide.

**COUNT I – BREACH OF CONTRACT**
**THE STATEMENT OF WORK AGREEMENT**

40. Plaintiff herein incorporates paragraphs 1-39 above as paragraph 40 of this Count I.

41. The Agreement between Greater Divide and Lippe Taylor, signed by Lippe Taylor on April 6, 2020, and attached hereto and incorporated herein as Exhibit A, is a valid and binding contract, supported by sufficient consideration, that is enforceable against Lippe Taylor by Greater Divide.

42. As set forth above in detail in paragraph 16, Lippe Taylor agreed, pursuant to the parties' contractual relationship, that it would not "directly or indirectly, solicit or hire [Greater Divide's] employees" during the term of the Agreement and for 18 months thereafter. See, Exhibit A, Agreement at Section 6, page 6.

43. Lippe Taylor systematically contacted one of Greater Divide's employees, Kyle Stamper, through Greater Divide's email system and induced him to leave Greater Divide and join Lippe Taylor. Lippe Taylor has breached the Agreement in that it has solicited and hired one of Greater Divide's employees in direct violation of Section 6 of the Agreement. Lippe Taylor has admitted to such solicitation and hiring of Mr. Stamper in violation of the Agreement.

44. The Agreement has a broad indemnification clause, as set forth above in detail in paragraph 17, by which Lippe Taylor is liable to indemnify Greater Divide for its "losses, costs,

damages, actions, and expenses" arising from Lippe Taylor's breach of the employee non-solicitation restriction. See, Exhibit A, Agreement at Section 6, page 5.

45. Lippe Taylor also contractually agreed to an attorney's fees provision in the Agreement, as set forth above in detail in paragraph 18, pursuant to which Greater Divide is entitled to recover its "reasonable attorney's fees, costs, expert fees, and other expenses," as a prevailing party, from Lippe Taylor. See, Exhibit A, Agreement at Section 6, page 7.

46. Greater Divide has suffered or will suffer damages as a result of Lippe Taylor's breach of the Agreement, including, but not limited to, loss of market valuation based on losing a key employee trained over several years to know both survey research and data science which had provided Greater Divide with a unique differentiation from its competition, the costs to replace the employee pirated by Lippe Taylor, lost sales or lost contracts as a result of the departure and loss of the pirated employee, lost revenue and profits, other loss of market valuation as a result of business lost on account of Lippe Taylor's breach, and its attorneys' fees and costs. These damages will continue to accrue. Lippe Taylor has received an unlawful benefit and been unjustly enriched as a result of its intentional breach of the Agreement. Greater Divide also will suffer irreparable injury and has no remedy at law that is as full, complete and efficient as preliminary and permanent injunctive relief to prevent further injury resulting from Lippe Taylor's current and future breaches, use, disclosure, misappropriation, solicitation, and other wrongful acts.

**COUNT II – TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL OR BUSINESS RELATIONS – EMPLOYEE PIRATING**

47. Plaintiff herein incorporates paragraphs 1-39 above as paragraph 47 of this Count II.

48. At all relevant times, Greater Divide enjoyed valid business relationships with its employees, including, but not limited to, with its employee Kyle Stamper.

49.     As a result of its contractual business relationship with Greater Divide, Lippe Taylor was introduced to Kyle Stamper, worked with Mr. Stamper while he was an employee of Greater Divide, and was provided information on his importance to Greater Divide's business and his access to Greater Divide's key confidential business information.

50.     Lippe Taylor intentionally interfered with such relationships, in that it targeted, solicited and induced a key Greater Divide employee to terminate his employment and commence employment with Lippe Taylor.  The targeted and systematic recruitment of Mr. Stamper was done over Greater Divide's corporate email system and such emails were then moved to a private email in an attempt to cover up the improper conduct.

51.     Lippe Taylor will benefit from the interference with Greater Divide's employment relationship by obtaining an employee experienced and trained in data science, and by receiving Greater Divide confidential business information from this employee.

52.     Lippe Taylor's intentional interference with Greater Divide's employment relationship has been for the improper and wrongful purposes of directly injuring the business of Greater Divide, obtaining confidential business information from the pirated employee, interfering with Greater Divide's long-standing customer and supplier relationships, and to unlawfully and unfairly compete with Greater Divide.

53.     While the full scope of damages is not presently calculable, Greater Divide has suffered damages, including but not limited to, lost sales or lost contracts and lost revenue and profits, as a result of the loss of its key employee and the void left by his departure, in addition to the irreparable injury caused by Lippe Taylor's actions, while Lippe Taylor has been unjustly enriched by such actions.  These damages will continue to accrue so long as Lippe Taylor is not

enjoined from tortiously interfering with Greater Divide's employee relationships and other wrongful acts as set forth herein.

**COUNT III – COMMON LAW UNFAIR COMPETITION**

54. Plaintiff herein incorporates paragraphs 1-39 above as paragraph 54 of this Count III.

55. Lippe Taylor unfairly competed and usurped corporate opportunities belonging to Greater Divide, despite express contractual restrictions, by targeting, soliciting and hiring a key employee who had knowledge of Greater Divide's confidential business information and by seeking to induce such employee to use or disclose such confidential business information against Greater Divide for the benefit of Lippe Taylor.

56. This employee pirating occurred while Lippe Taylor and Greater Divide were in discussions about the expansion of the on-going business relationship between the companies and specific proposals had been tendered to Lippe Taylor. Rather than going forward with an ongoing relationship, Lippe Taylor choose instead to hire away the key employee that would have rendered the service under the expanded business.

57. The employee pirating also occurred while the parties were discussing and contemplating Lippe Taylor's acquisition of Greater Divide because of Greater Divide's data science expertise, an area in which Lippe Taylor was lacking and wanted to develop an expertise and capability. Rather than acquire the business through adequate consideration in a transparent transaction, Lippe Taylor circumvented an acquisition and instead hired away a critical employee fundamental to Greater Divide's business and valuation.

58. The improper actions of Lippe Taylor constitute unfair competition and were designed to and have resulted in the purposeful interference with and the diminution in value of Greater Divide's business.

59. Lippe Taylor has gained an unfair and unlawful competitive advantage where it has saved the time, effort and expense of identifying, recruiting and hiring its own employee trained and experienced in data science and by developing its own data analytics capabilities and business segment in order to avoid the further business dealings contemplated with Greater Divide.

60. While the full scope of damages is not presently calculable, Greater Divide has suffered damages, including but not limited to, lost sales or lost contracts and lost revenue and profits, as a result of the loss of its key employee, the void left by his departure and the resulting lost business opportunities, in addition to the irreparable injury caused by Lippe Taylor's actions, while Lippe Taylor has been unjustly enriched by such actions. These damages will continue to accrue so long as Lippe Taylor is not enjoined from unfairly competing with Greater Divide.

**COUNT IV – MISAPPROPRIATION OF TRADE SECRETS**

61. Plaintiff herein incorporates paragraphs 1-39 above as paragraph 61 of this Count IV.

62. The confidential business information itemized herein in paragraphs 31 and 32 of this Verified Complaint, including but not limited to, information concerning (i) the design, backup and future build-out of methodologies related to market intelligence and surveillance, (ii) survey data sampling and non-survey alternatives to collecting primary data, including social media analysis, and (iii) the specific business plans and strategies to be pursued with respect to Lippe Taylor and other Greater Divide clients, constitute trade secrets under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq. and the Virginia Uniform Trade Secrets Act, Va. Code §

59.1-336, et seq. Such information has been or threatens to continue to be misappropriated by Lippe Taylor in that the confidential business information is information, including, but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use under the federal Defend Trade Secrets Act and the Virginia Uniform Trade Secrets Act.

63.     Greater Divide has undertaken reasonable and appropriate efforts to maintain the secrecy or confidentiality of its trade secrets, including, but not limited to, the use of confidentiality agreements and non-disclosure agreements, notifying employees of the secrecy and value of the trade secrets and confidential business information, disseminating trade secrets and confidential business information only on a need-to-know basis, limiting access to varying degrees of trade secrets and confidential business information based on computer password clearance, limiting use and transmission of information to internal uses and for employees only, taking measures to ensure confidentiality when employees leave the company, and ensuring return of company property by departing employees.  Lippe Taylor itself was subject to the NDA protecting the confidentiality and use and disclosure of Greater Divide's trade secrets and confidential business information, along with restrictions on the solicitation of employees and the pursuit of customers or projects disclosed by Greater Divide.

64.     Lippe Taylor knowingly misappropriated and/or threatens to misappropriate Greater Divide's trade secrets by acquiring such information by improper means through the targeted solicitation of Mr. Stamper, inducing Mr. Stamper to breach his duties not to use or disclose Greater Divide's trade secrets and confidential business information, and by using Greater Divide's trade secrets to solicit and pirate its employee.

65.     Lippe Taylor further knowingly misappropriated or threatens to misappropriate Greater Divide's trade secrets by operating a data science business that uses the same key employee that has made Greater Divide unique and such a success, and upon information and belief, by returning or directing the return of the Greater Divide laptop computer used by Mr. Stamper only after it had been completely wiped, with all of its contents deleted or destroyed prior to its return to Greater Divide.

66.     Lippe Taylor was at all times aware that it obtained Greater Divide's trade secrets through one charged with maintaining their confidentiality and otherwise through improper means, and knowingly intends to use the misappropriated information to, among other things, obtain an unfair head start and advantage in building Lippe Taylor's data analytics capabilities, which absent the possession of trade secrets would have taken multiple years and considerable expense, rather than just a few months.

67.     Lippe Taylor has acted willfully and maliciously in misappropriating and/or threatening to misappropriate Greater Divide's trade secrets.

68.     As a result of Lippe Taylor's misappropriation, threatened misappropriation, and/or inevitable misappropriation of Greater Divide's trade secrets, as well as the resulting damage to Greater Divide's competitive position, Greater Divide has suffered and will continue to suffer irreparable injury.  Greater Divide has no remedy at law that is as full, complete and efficient as preliminary and permanent injunctive relief to prevent further injury from Lippe Taylor's misappropriation, threatened misappropriation, inevitable misappropriation, and/or other wrongful acts.

69.     While the full scope of damages is not presently calculable, Greater Divide has suffered damages, including but not limited to, lost sales or lost contracts and lost revenue and

profits, in addition to the irreparable injury caused by Lippe Taylor's actions, while Lippe Taylor has been unjustly enriched by such actions. These damages will continue to accrue.

**COUNT V – BREACH OF CONTRACT**
**THE MUTUAL NON-DISCLOSURE AGREEMENT**

70. Plaintiff herein incorporates paragraphs 1-39 above as paragraph 70 of this Count V.

71. The NDA between Greater Divide and Lippe Taylor, signed by Lippe Taylor on February 13, 2020, and attached hereto and incorporated herein as Exhibit B, is a valid and binding contract, supported by sufficient consideration, that is enforceable against Lippe Taylor by Greater Divide.

72. As set forth above in detail in paragraph 31, Lippe Taylor agreed, pursuant to the parties' NDA, that for a period of three (3) years from the date of the last disclosure of confidential or proprietary information by Greater Divide, Lippe Taylor would maintain such information in strict confidence and use such information only for the purpose of doing business with Greater Divide, and further, that it would not use or disclosure such information to compete with Greater Divide or to pursue customers or projects disclosed under the NDA. See, Exhibit B, NDA at ¶¶ 3.1 and 3.2.

73. Lippe Taylor has breached the NDA in that it has used or disclosed confidential and proprietary information to which Greater Divide provided Lippe Taylor access pursuant to the NDA, including but not limited to, confidential employee information and information regarding Greater Divide's business operations, research and marketing processes, and data science operations. Lippe Taylor has used confidential and proprietary information in the course of soliciting and hiring Mr. Stamper in violation of the Agreement and in developing its own competing data analytics capabilities.

74. Greater Divide has suffered or will continue to suffer damages as a result of Lippe Taylor's breach of the NDA, including, but not limited to, loss of market valuation based on losing a key employee trained over several years to know both survey research and data science which had provided Greater Divide with a unique differentiation from its competition, the costs to replace the employee pirated by Lippe Taylor, lost sales or lost contracts as a result of the departure and loss of the pirated employee, lost revenue and profits, loss of market valuation as a result of business lost on account of Lippe Taylor's breach, and its attorneys' fees and costs. Lippe Taylor has received an unlawful benefit and been unjustly enriched as a result of its intentional breach of the NDA. Greater Divide also will suffer irreparable injury and has no remedy at law that is as full, complete and efficient as preliminary and permanent injunctive relief to prevent further injury resulting from Lippe Taylor's current and future breaches, use, disclosure, misappropriation, solicitation, and other wrongful acts.

**PRAYER FOR RELIEF**

Accordingly, and for the foregoing reasons, plaintiff Greater Divide respectfully requests that this Court award it the following relief:

A. Compensatory damages, to the extent damages are calculable, including but not limited to, costs associated with replacing improperly solicited employees, lost sales, price erosion, lost profits, and loss of market valuation due to improper employee solicitations and use of Greater Divide's confidential business information to make such solicitations, damages associated with interference with employee relationships, and the costs of Greater Divide's investigation into Lippe Taylor's wrongdoing.

B. Disgorgement of all profits, gains and other unjust enrichment obtained by Lippe Taylor as a result of the wrongful acts alleged herein.

C.　　An accounting and imposition of a constructive trust upon all assets, profits and other benefits, as equity demands, received by Lippe Taylor as a result of its wrongdoing, if Lippe Taylor continues to operate a competing data science and analytics business.

D.　　Punitive damages for the willful and malicious conduct committed by Lippe Taylor, including punitive damages in the amount of two times any award, pursuant to the Defend Trade Secrets Act and Virginia Uniform Trade Secrets Act.

E.　　Indemnification provided for under the Agreement from Lippe Taylor "against any and all claims, demands, losses, costs, damages, actions, and expenses arising from or relating to (a) Agency's [Greater Divide's] rendering of services . . . and (d) any breach, misrepresentation or other act or omission by Client [Lippe Taylor] and Client's [Lippe Taylor's] agents, employees, affiliates, and/or subcontractors."

F.　　Greater Divide's reasonable attorneys' fees including reasonable attorneys' fees provided for under the Agreement and for willful and malicious conduct pursuant to the Defend Trade Secrets Act and Virginia Uniform Trade Secrets Act.

G.　　Preliminary and permanent injunctions to restrain and enjoin Lippe Taylor from using or disclosing any of Greater Divide's trade secrets and confidential business information.

H.　　A court order directing Lippe Taylor to immediately turn over all of Greater Divide's property, including all documents and files (whether in paper, electronic or other form) containing any of Greater Divide's trade secrets and/or confidential business information and to thereafter delete and remove (under supervision of an outside expert approved by plaintiff) any and all electronic copies of any such documents and files from any and all computers or electronic storage media in its possession, custody or control.

I.      A court order directing Lippe Taylor to avoid any further solicitation or hiring of Greater Divide's current or former employees, agents, consultants and/or subcontractors and to avoid further interference with Greater Divide's relationships with its employees, agents, consultants and/or subcontractors.

J.      Compensatory damages for the misappropriation of Greater Divide's trade secrets and confidential business information during the time period prior to imposition of an injunction.

K.      Any further relief which the Court deems equitable and just.

Dated this 28th day of October, 2021.

Respectfully submitted,

s/Terry J. Smith
Terry J. Smith (To be Admitted P*ro Hac Vice*)
Robert R. Duda Jr. (To be Admitted P*ro Hac Vice*)
Smith O'Callaghan & White
33 North LaSalle Street
Suite 3600
Chicago, Illinois 60602
(312) 419-1000
terry.smith@socw.com
robert.duda@socw.com

s/Andrew J. Dean
Andrew J. Dean, VSB No. 88192
Patten, Wornom, Hatten & Diamonstein, L.C.
12350 Jefferson Avenue
Suite 300
Newport News, Virginia 23602
(757) 223-4500
adean@pwhd.com

Attorneys for Plaintiff Greater Divide, Inc.

**VERIFICATION**

Kirsten Bech, the undersigned, certifies that she holds the position of President with Greater Divide, Inc., the plaintiff herein, that she has read the foregoing Verified Complaint, and that the allegations set forth in this Verified Complaint are true and correct to the best of her knowledge based upon her personal knowledge, review of business records, and/or information reasonably available to her at this time, except as to matters stated to be on information and belief, and as to such matters, the undersigned certifies that she believes them to be true.

Dated: October 22, 2021

Kirsten Bech

Ms. Kirsten Bech
Greater Divide, Inc., President